Statement of the Case.
MONROE, O. J.
Relator alleges that he is district attorney of the Twenty-Ninth judicial district (composed of the parishes of St. Bernard and Plaquemines); that the grand jury of the parish of Plaquemines returned into the district court sitting for that parish an indictment charging him with extortion in office; that on April 9, 1920, he filed in that court a sworn petition requesting the judge to recuse himself and appoint the judge of an adjoining district to try the case, or else appoint such judge to hear and pass on the *397 question of recusation vel non, and the petition thus mentioned is annexed to, and made part of, the petition addressed to this court. Relator further alleges that the causes for recusation set forth in said petition are that the prosecution in question was set on foot by the judge, who acted therein as detective, prosecuting witness, prosecuting attorney, and judge, and that, as a rival candidate of relator for the judgeship of said district, he was actuated by a desire to advance his own interest, candidacy, and prospective success and to injure relator’s candidacy, and, by reason of bias and prejudice on his part, that relator could not obtain a fair trial from said judge, the cause being triable before him without a jury; that, although relator’s said petition sets forth the strongest possible reasons for his recusation, said judge, on April 10th, took the matter under advisement, and on April 17th handed down a ruling and decree refusing either to recuse himself or to appoint another judge to hear and determine the question of his recusation; and that he thereupon caused a rule to be issued requiring relator to show cause why he should not be punished for contempt for having made the ¿negations for his recusation which relator believes to be true, pertinent, proper, and privileged, and not such as to subject him to any such proceeding, which is usurpatory, oppressive, and violative of relator’s rights. He further alleges in the petition for recusation as follows:
“That your honor not only hunted up evidence in this case so as to bring the present cause against petitioner, but had the clerk of court to summon the witnesses, without notice to accused, before the grand jury, to endeavor to substantiate said charge, and, after summoning the said witnesses before the grand jury, which latter body was illegally drawn and impaneled so as to include a large majority of those politically opposed to petitioner, then and there proceeded, without any affidavits or evidence before you, to make injurious accusations against defendant as to various alleged facts before said grand jury, greatly to petitioner’s wrong and prejudice; * * * that, after hearing said witnesses, the grand jury made- some finding and return against petitioner in open court; that, instead of ordering said indictment filed, your honor, in a dual capacity, as acting prosecuting officer and judge, took said indictment from the grand jury and read the same aloud, as if demurring on the part of the state thereto, discarded said indictment, and, without any request by the grand jury for you so to do, ordered the deputy clerk of this court to give said body private instructions to go back to their rooms and bring in another indictment against the accused, and, without any request from the grand jury, also instructed Mr. Philip Livaudais, a lawyer of the court, a candidate, with your honor, for the district attorneyship, to go to the grand jury room to prepare another indictment against petitioner; that the said Mr. Livaudais was never appointed district attorney pro tern., nor was he ever sworn as such; that he prepared the document, styled an indictment herein, and illegally remained in the grand jury room and returned into court with said grand jurors and said alleged indictment when said indictment was received and ordered filed.
“(4) That thereupon your petitioner moved to quash this indictment, as per the motion on file in the cause, on the ground that the grand jury that found the same was illegally drawn and constituted, and, after due proof of the allegations of said motion, said motion was overruled, and a bill of exceptions was reserved to said ruling; that immediately thereafter said motion was copied and renewed by Bernard Ornes and others on an indictment found by the same grand jury, which similar motion to quash was then and there sustained, and said grand jury was thereby held to be an illegal body; that said contrary ruling clearly showed how great was the prejudice of your honor against the accused.
“(5) * * * That this entire proceeding against accused and all the illegal acts done against defendant herein arose from the fact that your honor and accused are prospective rival candidates for judge at the approaching judicial election, and that your honor has a direct personal interest in this cause in order, by injuring this defendant, to enhance your own prospects of success, and you cannot justly try this cause.
“(6) That, in accordance with this campaign to injure your petitioner, your honor has aided in having said judicial attacks and notice of said indictment given great publicity in the Daily City Item of New Orleans, for the ex *399 press purpose of injuring petitioner and inflaming the public against him, all contrary to the ethics of proper judicial procedure,” etc.
Relator prays that, after hearing, the judge, made respondent, he prohibited frdm further proceeding either in the matter of the indictment or the rule for contempt, and that he be ordered either to recuse himself as to the prosecution under the indictment or refer the question of his recusation to another judge.
The respondent judge, for cause why judg-. ment should not be rendered as prayed for, alleges as follows:
That it appears from relator’s petition that his prosecution was set on foot by the grand jury; that, had he set out the facts more completely, it would appear that the only witnesses summoned in that matter by direction of respondent were Prank Topping and R. Russell, the defendants in the cause for the dismissal of the prosecution in which relator is charged with having illegally received a fee; that, so far as respondent could judge, the only witnesses called before the grand jury, other than the two above named, were the sheriff and the clerk of the court, unless relator was also called, from which fact it is shown' that no detective work was required; that respondent “knows nothing of this cause, except by hearsay, to which he has never testified in any way; that, as judge, * * * your appearer considered it his duty to charge the grand jury to investigate the matters brought to his attention by conversations made indiscriminately in his presence, as to the costs attached to nolle prosequi cases, particularly the one of State v. Topping and Russell, and the alleged share of the same received by the district attorney, and, from the frequency of the motions made by the said district attorney to nolle prosequi cases in open court, on the latter two of which made by him on March 2d, 1920, your appearer, as judge, in open court, remonstrated with defendant, relator herein, concerning the nolle prosequing of cases of serious nature so frequently, whereupon the district attorney submitted to the court that he had unlimited authority to so nolle prosequi cases without supervision by the court. One of these two latter cases was that .of State v. Topping and Russell, above mentioned. Your appearer submits to this honorable court that he would have been lax in .the performance of the duties of his office * * * if he had not brought such a matter for investigátion before the grand jury, which he did, not by way of making accusations against the district attorney, but by submitting the matter openly and in an unbiased fashion to the grand jury, and giving them the law relating to the subject and the cases which had been lately nolle prosequied by the district attorney, as shown by the official records of the court over which your appearer presided. In this connection your appearer attaches thereto and makes a part of his answer his charge to the grand jury of April 5, 1920, * * * and respectfully refers this honorable court to pages 3, 4, and 5 thereof, and also attaches and makes a part hereof the existing order in the ease of State v. Ornes et al., referred to in paragraph 4 of defendant’s petition, filed in Twenty-Ninth judicial district court.
“Your appearer submits that defendant relator alleges that for reasons of bias and prejudice on the part of your appearer as judge, he cannot obtain a fair and impartial trial, but in support thereof he sets up no facts to bear, except that he is a rival candidate, although setting out in paragraph 5 of his original petition for your appearer’s recusation that he was a ‘prospective’ rival candidate for judge at the approaching judicial election.” It is respectfully submitted that the fact of being prospective rival “candidates for the same elective office does not constitute ‘interest’ on the part of a judge of a court, presiding at the trial of a criminal prosecution by the state of Louisiana, any more than it would be considered ‘interest’ on the part of a judge in presiding over a criminal trial of a pronounced politically opposed qualified voter who might have considerable influence over other voters in a candidate’s district.”
Respondent avers that he considered the causes alleged by relator for his recusation frivolous, and that they were properly so treated by him, without referring the matter to another judge, and that he considered that relator was guilty of contempt of court in making such' allegations, and was properly ruled to show cause why he should not be punished therefor.
In respondent’s charge to the grand jury, which he makes part of his return, he instructs that body in the language of the Constitution and the statute;
*401 “That in cases of * * * misdemeanor, when the parties compromise, and the prosecution is withdrawn, no charge shall be brought against the parish. The parties compromising shall pay all costs in said cases. It shall be lawful for the Attorney General or the district attorney to enter a nolle prosequi. * * * Besides the salary of the district attorney, he shall also receive fees; but no fees shall be allowed in criminal cases, except on conviction, which fees shall not exceed five dollars in each case of misdemeanor.
“That any public officer * * * whose compensation * * * is fixed by the Constitution or laws * * * who shall charge, receive, or take, directly or indirectly, any more than the said lawful compensation, shall be deemed guilty of extortion in office and shall be' punished,” etc.
“In this connection,” the charge, however, continues, “the following is submitted for your investigation upon which to make returns to this court: In the matter of State v. Frank Topping and R. Russell, charged with ‘malicious killing of animal of another,’ the parties compromised at a cost exorbitant to the accused, and it was lawful for the case to be nolle prosequied; it was not for the district attorney to charge, receive, or take, directly or indirectly, any fees in this matter.”
Several other cases are said to have been compromised, and in each instance the grand jury is instructed that the district attorney was entitled to no fee, and the charge again proceeds:
“It is alleged that the district attorney received fees in these above matters and others of like character in this parish, and if you find, from examining the witnesses summoned to appear before you on this date, that the district attorney has charged, taken, or received fees or money in any of these cases, it is your duty to return a bill and make a report to this court.”
Respondent also makes part of his return an order which he appears to have handed down in the matter of State v. Bernardo Ornes et al. (upon the same day that he handed down the ruling and decree of which relator complains), reversing a previous ruling whereby he had quashed the indictment against Ornes and others upon grounds affecting the legality of the organization of the grand jury, which grounds, relator alleges, had previously; but unsuccessfully, been asserted in his behalf.
Opinion.
[1] Prior to 1858 there appears to have been no provision in our law for the recusation of a judge in a criminal case, and Act No. 303 of that year (now incorporated in the Revised Statutes of 1870 as sections 1067-1069) supplied that omission by providing that—
“Any judge may be recused, or may recuse himself in criminal cases if said judge be con-nected by blood or marriage with any person charged with any offenSe against the laws of the state.”
Act No. 35 of 1877, p. 35, § 1, amending and re-enacting R. S. § 1067, reads in part:
“Any judge may be recused or may recuse himself in criminal cases:
“First. If said judge be connected by blood or marriage with the accused.
“Second. If said judge be related to the party injured by the accused within the fourth degree, or if he be the father-in-law, son-in-law or brother-in-law of the party injured by the accused.
“Third. If said judge had been employed as prosecuting attorney, or for the defense, before his election or appointment as judge.”
And then follows section 2, providing for the recusation of district attorneys, and the enacting clause, there being no repealing clause.
Act No. 40 of 1880 is entitled:
“An act providing causes of recusation of the district judges, and for the trial of recused cases in the district courts, the parish of Orleans excepted.”
Section 1 provides the causes for recusation as follows:
“That any judge * * * shall be recused for either of the following causes:
“First. His being interested in the cause; provided, that, in all civil and criminal cases in which the state, the parishes or political *403 or religious corporations are interested, it shall not be sufficient cause to challenge the judge, who may have cognizance of the case, to allege that he is a citizen or inhabitant of the state or of the parish, or a member of the said political or religious corporations, or that he pays any state, parish, or city tax.
“Second. His being related to one of the parties within the fourth degree.
“Third. His having been employed or consulted as advocate in the cause.
“Fourth. His being father-in-law, son-in-law, or brother-in-law of one of the parties.
“Fifth. His having rendered definitive judgment in the cause in any other court.”
Sections 2, 3, 4, 5, and 6 provide for the appointment of a lawyer or judge of another court to take the place of the recused judge and for the trials of the recused cases. Section 7 declares that those sections shall not apply to the parish of Orleans, and section 8 repeals all conflicting laws.
Act No. 35 of 1882, p. 48, is entitled “An act amending article 338 of the Code of Practice relative to causes of recusation of judges,” and it reads (quoting in part) as follows:
“The causes for which a judge shall be recused are: [Then follow the clauses as in Act 40 of 1880, including the proviso in the “First” paragraph, with a re-enactment of the “Fifth” paragraph so that it now reads:]
“5. His having performed any judicial act in the. cause in any other court.”
The sections 2, 3, 4, 5, 6, and 7, as in the act of 1880, are omitted. Section 2 is the enacting clause, and there is no repealing clause.
The main purpose of the statute was probably to supply a supposed defect in the act of 1880 arising from the fact that the title is, perhaps, susceptible of the interpretation that no part of the act was intended to apply to the parish of Orleans. Upon a careful consideration of that question, however, and a construction of section 7 with the title, it seems not unlikely that section 1 was intended to apply to the city as well as the parishes, and that the other sections were made inapplicable to the city because the city judges are sufficiently numerous to enable them to take each others places, which renders it unnecessary to appoint a judge from another district in the event of a recusation. On the other hand, the fact, that the act of 1882 purports, by its title, to amend and re-enact an article of the Code of Practice may be thought an insufficient notice of the inclusion in the text of provisions covering criminal, as well as civil cases. However.that may be, Act No. 40 of 1880 seems to be all-sufficient for the purposes of this case.
In State v. Banta, 122 La. 235, 47 South. 538, the cause for recusation alleged by defendant (in a criminal prosecution which was to be tried without a jury) was that the judge was defendant’s personal enemy, and was so biased and prejudiced as to be incapable of giving him a fair trial, and it was there said (inter alia) in the opinion of the court:
“The act of 1880, however (as also the act of 1882), reads that the judge ‘shall’ be recused for other causes besides [relationship], and the first cause specified is ‘his being interested in the cause.’ Not his being interested because of relationship, or prior employment, or prior action as a judge, but * * * ‘his being interested in the cause.’ * * * The question, then, presents itself: .What is meant by ‘interest,’ as applied to the' relation of a judge to a criminal cause? And that question we do not feel called upon, at this time, to answer; the purpose of the foregoing observations having 'been merely to show that in the question here arising upon the motion to recuse there is something to be considered, and hence that it is not a case of pure frivolity, such as would be presented if the motion were based upon an allegation relating to the color of the judge’s eyes or the phases of the moon. And, such being the conclusion, it follows that the writ of prohibition must issue, since it is well settled that (save when purely frivolous reasons are assigned) a judge is incompetent to sit in judgment upon a motion for his own recusation” — citing authorities.
That ruling has since been modified to the extent that it has been held, in effect, that *405 the bare allegation of bias' and prejudice is not an allegation of interest on tbe part of the judge, and does not disclose a cause for his recusation, within the terms of the statute, and that a motion to recuse based upon that ground alone, or upon that ground with specifications which are not within the statute, may be overruled, as frivolous and without referring the matter to another judge. State v. Blount, 124 La. 202, 50 South. 12; State v. Hayes, 127 La. 764, 53 South. 983; State v Morgan, 142 La. 764, 77 South. 588.
The allegation that the judge has an interest in the determination of the cause that is before him for decision is, however, within the statute, and the jurisprudence of this court would seem to be settled to the effect that, though it may eventually prove to be unfounded, it is not for the judge whose recusation is demanded so to decide, since no one can be allowed to sit as judge in his own case.
In State ex rel. Tyrrell v. Judge, 33 La. Ann. 1293, it appeared that a motion was made to recuse the judge as having a personal interest in the result of the (civil) suit, and the motion was overruled. After referring to the provisions of the Code of Practice on the subject, this court said:
“When a refusal has thus been made to the judge’s trying the cause on account of interest, that refusal must be respected by the judge. He must either admit his disqualification and enter up the order of recusation or deny it, and thereby raise an issue touching Ms right to try the case. If he pursues the latter course, it is plain to see that he could not legally decide that issue himself. [Our italics.] Assuming that he is interested as charged, that would prompt him to declare himself not interested, as much as it would move him to follow that interest in the judgment that he would render in the cause.
“Hence it is not enough for the judge to disavow an interest, but, where such disavowal is not satisfactory to the party making the challenge, as in the present case, and he insists upon showing such interest in the judge, it evinces an unwarranted exercise of authority in this officer to assume to determine this question, so exclusively personal to himself and affecting his own competency. 1-Ie should at once recuse himself on this issue and refer it to be tried -in the manner pointed out by law. If on such trial the ground is shown to be untenable and the competency of the judge to try the case is decreed, then, and not till then, is the judge authorized to proceed in the case. To hold otherwise would be to render the important right of recusation or challenge nugatory and worthless.”
[2] The doctrine thus enunciated has been applied, not only in cases of alleged interest on the part of the judge, but also in cases where other grounds for recusation were relied on. Board of Church Wardens v. Perche, 36 La. Ann. 160; State ex rel. Segura v. Judge, 37 La. Ann. 253; State ex rel. Trimble v. Judge, 3S La. Ann. 247; State ex rel. Nolan v. Judge, 39 La. Ann. 994, 3 South. 91; State ex rel; Hogsett v. Justice, 47 La. Ann. 1595, 18 South. 622; State v. Poster, 112 La. 533, 36 South. 554; State ex rel. Stewart v. Reid, 114 La. 97, 38 South. 70.
As the rule that no one shall sit as judge in his own case is well founded in law, as well as in ethics, so likewise is the rule that no one shall act as prosecutor in a ease in which he is to sit as judge. A grand jury is an informing and accusing body. A district attorney is the representative of the state, and among his duties are those of aiding the grand jury in its investigations, in the formulation of its accusations, and of prosecuting those against whom such accusations are directed. The judge sits as the representative of justice to determine, when acting without a jury, whether, according to the evidence adduced, those who are accused of offenses and brought to trial before him, and whom he must presume to be innocent until proved to be guilty, are to be convicted or acquitted of such accusations. It is no doubt part of the obligation that the law imposes on him to instruct the grand jury to investigate and find out whether the laws are being obeyed or violated, but it is not only not a part of, but is distinctly inconsistent with, that obli *407 gation for him to participate in such investí-' gation, to assume that a particular offense has been committed, or to lend his aid in its prosecution, since he thereby prejudices the case which he is required to try with an open mind, and disqualifies himself for the discharge of the most important of his duties.
“While the statutes frequently define the character of the charge,' it may be stated as a general rule that the extent to which the grand jury shall be instructed by the court rests in the discretion of the presiding judge. However, it is improper for the court, in its charge to the grand jury, to express an opinion as to the guilt or innocence of a person accused of crime to be investigated, or to assume that indictable offenses have been committed, concerning which it is the duty of the grand jury to inquire.” 20 Cyc. p. 1320, H 2.
Respondent says in his return that he “knows nothing of this cause’.’ (referring to the matter of State v. Nunez, in which it is charged that defendant, relator here, did, in the matter of State v. Erank Topping and R. Russell, charge, and receive a fee from those defendants, “said prosecutions having been, by him, * * * therefore, nolle prosequied,” etc.), “except by hearsay, to which he has never testified in any way.” And yet in his charge to the grand jury, made part of his ■return, he informed that body, as of a fact within his knowledge—
That “in the matter of State v. Prank Topping and R. Russell * * * the parties compromised at a cost exorbitant to the accused, * * * ” that “it was not for the district attorney to charge, receive, or take * * * any fee in the matter,” and that “it is alleged that the district attorney received fees in these above matters [other cases having been similarly mentioned in the charge] and others of like character in this parish, and if you find, from examining the witnesses summoned to appear before you on this date, that the district attorney has charged, taken, or received fees or money in any of these eases, it is your duty to return a bill and make a report to this court.”
Knowing nothing of the cause, except by hearsay, and not having testified to what he heard, respondent nevertheless stated to the grand jury, from his seat on the bench, and positively, that Topping and Russell had compromised a charge of misdemeanor, at a cost exorbitant to them, and that it was alleged that the district attorney had charged a fee in that case, and others of a similar character. He admits that he directed that Topping and Russell should be summoned to appear and testify before the grand jury, and it may fairly be assumed that they were the witnesses referred to in the charge as “summoned to appear before you on this date.” It may also fairly be assumed that respondent had interviewed the witnesses before he had them summoned.
[3] Prom all of which we conclude that the grounds upon which relator predicates his demand .that respondent recuse himself are not frivolous, but are quite serious enough to preclude respondent from sitting in judgment upon the question of his own competency to preside at the trial of the prosecution which has thus been initiated, and so far conducted; also that the setting up of those grounds was pertinent to the obtention of the relief which relator sought and was entitled to demand, and hence cannot be made the basis of a proceeding against him for contempt of court.
It is therefore ordered that respondent either recuse himself in the matter of State of Louisiana v. Nemours H. Nunez, No. 228 of the docket of his court, or else appoint some district judge of an adjoining district to determine whether he shall or shall not be recused and in the meanwhile that he be prohibited from further proceeding in said matter, as also in the matter of the rule for contempt.
It is further ordered that respondent pay the cost of this proceeding.